UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| D.C. and C.C. o/b/o J.C., | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 18-4147 (FLW) (LHG) |
| | : | |
| v. | : | |
| | : | OPINION |
| FREEHOLD REGIONAL HIGH SCHOOL BOARD OF EDUCATION, | : | |
| | : | |
| Defendant. | : | |

**WOLFSON, United States District Judge:**

In the present child education case, Plaintiffs D.C. and C.C., on behalf of J.C. ("Plaintiffs"), seek relief from two interlocutory orders of an Administrative Law Judge ("ALJ") in Plaintiffs' pending due process petition proceeding in the Office of Administrative Law ("OAL") against Defendant Freehold Regional High School Board of Education ("Defendant" or "Board").[1] First, Plaintiffs move for an emergent application for a stay and relief from judgment from the ALJ's April 24, 2018 Order permitting Defendant to cease paying J.C.'s tuition. Second, Defendant moves to dismiss Plaintiffs' March 23, 2018 Verified Complaint Seeking Interlocutory Appeal ("Compl.") of the ALJ's February 21, 2018 interim decision allowing Defendant's expert to testify in the OAL Proceeding.[2]

---

[1] The Court will refer to this proceeding as the "OAL Proceeding."
[2] Notwithstanding the Complaint, Plaintiffs' briefing does not address the order regarding the expert—which is clearly interlocutory and thus not subject to review here—and instead focuses exclusively on the order regarding the stay put provision.

1

For the following reasons, Plaintiffs' motion for an emergent application for stay and relief from judgment is denied, and Defendant's motion to dismiss is granted.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The underlying OAL Proceeding concerns Plaintiffs' dissatisfaction with the educational plan that Defendant had proposed for Plaintiffs' son, J.C. Compl. at 2. J.C., who is currently a high school student at the Hun School, has been diagnosed with ADHD, Intermittent Explosive Disorder, Generalized Anxiety Disorder, Tourette's Syndrome, Seizure Disorder, Dyslexia and Dysgraphia. *Id.* J.C. was enrolled at the Hun School pursuant to a 2013 OAL decision that granted Plaintiffs' previous due process petition against the Marlboro School District; that decision provided J.C. with an Accommodation Plan under Section 504 of the Rehabilitation Act of 1973 ("504 Plan") and directed the school district to pay the costs associated with J.C.'s attendance at the school. ECF No 4-1 at 4. Entering his 9th grade year in 2015, J.C. became part of Defendant's school district, and, although Defendant offered J.C. its own 504 Plan before the school year started, he entered the year without an agreement with Defendant regarding tuition payment. *Id.*

On August 25, 2015, Plaintiffs commenced the OAL Proceeding, filing a due process petition seeking a "stay put" order at the Hun School and rejecting Defendant's proposed 504 Plan. Compl. at 3. In the OAL Proceeding, the ALJ issued an oral order on February 21, 2018, allowing Dr. Teresa Harrow Taylor to testify as an expert witness for Defendant ("February 21 Order"). *Id.* at 13. On March 23, 2018, Plaintiffs filed the present Complaint, seeking a judgment reversing the February 21 Order. ECF No. 1. Then, on March 29, 2018, Defendant moved in the OAL Proceeding to cease paying J.C.'s tuition at the Hun School. ECF No. 4 at 5. On April 24, 2018, the ALJ issued a written interim order granting Defendant's motion ("April 24 Order").

ECF No. 4-1. The ALJ ruled that, as J.C was not a special education student subject to the requirements of the IDEA, the automatic "stay put" provision in the IDEA, which would allow J.C. to stay in his current educational placement during the pendency of the OAL Proceeding, did not apply. *Id.* at 7-8. However, because J.C. is a disabled student subject to the requirements of Section 504, Section 504's "inherent" stay put provision was potentially applicable. *Id.* at 8. Nonetheless, the ALJ ruled the Plaintiffs were not entitled to the protections of Section 504 because the issue did not involve a disciplinary dispute, and, therefore, granted Defendant's motion to cease paying J.C.'s tuition. *Id.* Plaintiffs then moved in this Court for a stay of the April 24 Order pursuant to Fed. R.Civ.P. 62(b), and for relief from judgment regarding the same Order, pursuant to Fed. R. Civ. P. 60(b).[3] ECF No. 4.

## II. LEGAL STANDARD

A party may move for dismissal under Fed. R. Civ. P. 12(b)(1) based on lack of subject matter jurisdiction. When faced with a Rule 12(b)(1) challenge to jurisdiction, the court "must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction. If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." *Id.* Factual challenges attack the factual basis for subject matter jurisdiction; that is, the defendant argues that the allegations on which jurisdiction depends are

---

[3] Defendant argues that Plaintiff never filed a reply brief in response to Defendant's opposition to Plaintiffs' motion for an emergent application, and that all arguments raised with respect to this motion are waived. Plaintiffs' error is inconsequential, however, because, for the reasons set forth, *infra*, the Court lacks subject matter jurisdiction over the case.

3

not true as a matter of fact. *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 (3d Cir. 2002); *see also U.S. ex rel. Atkinson*, 473 F.3d at 514 (stating that a jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites.").

"[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Federal Sav. &Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). Further, the court is "permitted to make factual findings, beyond the pleadings, that [a]re decisive to determining jurisdiction." *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008). However, a court should not rule on the merits of a plaintiff's case under Rule 12(b)(1) in light of the fewer procedural protections accorded to a plaintiff. *Id.* at 144-45 ("By requiring less of a factual showing than would be required to succeed at trial, district courts ensure that they do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery.")

### III. DISCUSSION

Both Plaintiffs' motion for emergent relief and Defendant's motion to dismiss present the same threshold question: whether the Court has subject matter jurisdiction to grant Plaintiffs' relief given their apparent failure to exhaust available administrative remedies.

The IDEA provides for a "free appropriate public education" ("FAPE") for all special needs children and establishes an elaborate procedural mechanism to protect the rights of those children. 20 U.S.C. § 1412. "One procedural safeguard is the right to a due process hearing

before an administrative official." *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). Thus, plaintiffs bringing claims pursuant to the IDEA must exhaust the administrative process before filing of a civil suit pursuant to 20 U.S.C. § 1415(l), which provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 *et seq.*], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 *et seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l); *see also R.R. v. Manheim Twp. Sch. Dist.*, 412 F. App'x 544, 548 (3d Cir. 2011) (holding, based on this language, to the extent that any claim seeks relief that is available under the IDEA, the IDEA's administrative remedies must be exhausted before such an action is brought).

As such, the Third Circuit has determined that "it is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court" because permitting a claim prior to exhaustion would "render superfluous…the detailed procedural protections…in the statute" and "run counter to Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each…child." *Komninos*, 13 F.3d at 778 (citing *Smith v. Robinson*, 468 U.S. 992, 1011–12 (1984)).

Therefore, a plaintiff must demonstrate the applicability of one of the four narrow exceptions to the IDEA's statutory exhaustion requirement before a district court may exercise

jurisdiction over an interlocutory decision. *Id.* To excuse the failure to exhaust, the plaintiff bears the burden to establish any of the following exceptions: (1) "where the issue presented is purely a legal question"; (2) "where exhaustion would be futile or inadequate"; (3) "when exhaustion would work 'severe or irreparable harm' upon a litigant"; or (4) "where the administrative agency cannot grant relief." *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 88–89 (3d Cir. 1996) (internal quotation marks omitted).

Plaintiffs contend that the February 21 Order and the April 24 Order are appealable because the "futility" exception to exhaustion applies.[4] Under the futility exception, "[p]arents may bypass the administrative process where exhaustion would be futile or inadequate." *Honjg v. Doe*, 484 U.S. 305, 327 (1988). *See also Beth V.*, 87 F.3d at 89 ("[P]laintiffs may thus be excused from the pursuit of administrative remedies where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided through the administrative process"). In other words, the futility exception only applies where a plaintiff is unable to obtain his or her requested relief due to some administrative defect; the futility exception is not meant to apply to a plaintiff who merely disagrees with the ALJ's decision. *See, e.g., Grieco v. N.J. Dep't of Educ.*, Civ. No. 06–cv–4077, 2007 WL 1876498, at *6 (D.N.J. June 27, 2007) (a claim is not "'systemic' if it involves only a substantive claim having to do with

---

[4] Although Plaintiffs "acknowledge that the present Complaint was filed before all proceedings before [the ALJ] concluded" they also seem to argue that the Orders are "final" because they "represented a final judgment on the merits with respect to the issues addressed in those Orders." ECF No. 12 at 4. Plaintiffs cite no authority for this novel proposition, and, to the contrary, the ALJ's decision granting Defendant's motion to cease paying tuition did not terminate the case, as the ALJ has yet to rule the merits of Plaintiffs' claims, i.e. whether Defendant has denied a FAPE to J.C. Thus, these cannot constitute "final" orders, as "the word 'final'…requires that the action under review 'mark the consummation of the agency's decisionmaking process.'" *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 478 (2001) (citing *Bennett v. Spear*, 520 U.S. 154, 177–178 (1997)).

limited components of a program, and if the administrative process is capable of correcting the problem"). Here, Plaintiffs do not argue that an administrative defect is at fault for the ALJ's adverse rulings. Rather, Plaintiffs merely disagree with these rulings, arguing that the ALJ ignored undisputed facts and misapplied law in reaching the decision that the "stay put" protections of Section 504 were inoperative.[5] Thus, the futility exception does not apply here. *See L.V. ex rel. G.V. v. Montgomery Twp. Sch. Dist. Bd. of Educ.*, No. 13-2595, 2013 WL 2455967, at *4 (D.N.J. June 5, 2013) (citing *W.B. v. Matula,* 67 F.3d 484, 496 (3d Cir. 1995)) ("Mere disagreement with the outcome of an ALJ's interim decisions in the administrative hearing process is insufficient to satisfy the futility exception.").

In the alternative, Plaintiffs erroneously argue that the exhaustion requirement is inapplicable here because the claims are not governed by the IDEA, an argument that seemingly disavows their Complaint's representation that they were asserting IDEA claims in the administrative proceedings. According to Plaintiffs, the ALJ's determination that J.C. was subject to the requirements of Section 504—and not the IDEA—when deciding whether the "stay-put" provision applies, means that their claims are not IDEA claims subject to exhaustion. However, the ALJ's answer to the "stay put" question is irrelevant because an "interlocutory appeal cannot be based on the stay-put provision," when, as is the case here, the student is not

---

[5] Plaintiffs also argue that "orders regarding a school board's obligation to pay tuition for an IDEA or Section 504 student is a question of 'damages' that would not deprive this Court of subject matter jurisdiction." ECF No. 12 at 4. *Batchelor*, the case that Plaintiffs cite for this proposition, however, merely cites a separate case where the court held that exhaustion would be futile where plaintiffs sought damages for physical abuse and where no other educational issues needed resolution. 759 F.3d at 280-81 (citing *Vicky M. v. Northeastern Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 453-53 (M.D. Pa. 2007)). Here, however, as the OAL Proceeding concerning the adequacy of the Board's proposed 504 Plan is still pending resolution, there are multiple educational issues that have not been resolved.

currently enrolled in a placement that the educational authorities and parents have agreed upon.[6] *B.C. v. Wall Twp. Bd. of Educ.*, No. CIV.A. 13-7085 FLW, 2013 WL 6498995, at *3 (D.N.J. Dec. 11, 2013) *(*citing *Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 651 (3d Cir. 2000)).

Moreover, the IDEA is clearly at the center of Plaintiffs' case. More specifically, in determining whether claims are governed by the IDEA, what matters is "the crux—or, in legal-speak, the gravamen" of Plaintiffs' case, not the narrow issues decided in the ALJ's interlocutory orders. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755 (2017).[7] In that regard, notwithstanding the "stay-put" ruling, the ALJ has, at multiple points in the proceedings, emphasized that the IDEA was always the crux of Plaintiffs' case, a fact that, before now, Plaintiffs have openly admitted. As the ALJ concluded in a March 24, 2017, Order: "Petitioner (Plaintiffs herein) argues that the petition has always been regarded as brought under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. I concur." ECF No. 13-1 at 4. It is difficult to imagine a clearer statement that the IDEA is at the heart of Plaintiffs' case.

Further, even were the IDEA's centrality to Plaintiffs' case not so explicitly clear, Plaintiffs would still be required to exhaust their administrative remedies because their claims are clearly the type that the IDEA subsumes. Administrative exhaustion under the IDEA is required even for non-IDEA claims, such as Section 504 claims, "where the plaintiff seeks relief that can be obtained under the IDEA." *Batchelor*, 759 F.3d at 272. In other words, as the "main requirement" of the IDEA "is that states make available a FAPE to children with disabilities,"

---

[6] As was discussed in the facts, *supra*, Plaintiffs and the Board never agreed on J.C.'s educational plan and his placement, which remain the subjects of the OAL Proceeding.
[7] While Plaintiffs devote several pages to a discussion of *Fry*, the holding of *Fry* is, as Plaintiffs concede, that the court should look to the crux of a plaintiff's claim in determining whether relief is available under the IDEA. This is the standard that I have applied here.

when a plaintiff's claims "are related to the provision of FAPE…[they] must be exhausted." *Id.* at 271, 273-74. The Complaint in this matter leaves no doubt that Plaintiffs' claims are related to the provision of FAPE to J.C. and are subject to IDEA's exhaustion requirement. Indeed, the Complaint largely quotes from Plaintiffs' filings in the OAL proceeding, which are explicit that Plaintiffs seek the remedy of "Compensatory Education for the time period that J.C. was not provided with a free appropriate public education ("FAPE") in a safe learning environment." Compl. at 7, 11. Thus, whether or not framed explicitly as IDEA claims, Plaintiffs' claims must be administratively exhausted before Plaintiffs can bring suit in federal court.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, because Plaintiffs have not exhausted the administrative process, and because none of the exceptions to exhaustion apply, the Court lacks subject matter jurisdiction over Plaintiffs' case. Defendant's motion to dismiss is, therefore, granted, and Plaintiffs' motion for an emergent application for stay and relief from judgment is denied.

Dated: December 18, 2018                          /s/ Freda L. Wolfson
                                                  Hon. Freda L. Wolfson
                                                  United States District Judge